BRANCART & BRANCART
   Christopher Brancart (SBN 128475)
   Liza Cristol-Deman (SBN 190516)
Post Office Box 686
Pescadero, CA 94060
Tel:   (650) 879-0141
Fax:   (650) 879-1103
cbrancart@brancart.com
lcristoldeman@brancart.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PROJECT SENTINEL, a California Nonprofit Corporation; MICHAEL BAKER; and, SARAH BAKER; individually and on behalf of the GENERAL PUBLIC,<br><br>Plaintiffs,<br><br>vs.<br><br>THE FEIRMAN CORPORATION, a California Corporation; THE RIF FAMILY PARTNERSHIP, L.P.; and, DON PHELPS;<br><br>**Defendants.** | Case No. C-08-02486 HRL<br><br>**FIRST AMENDED COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF** |

## I. INTRODUCTION

1.  In this action, plaintiffs Project Sentinel, Michael Baker, and Sarah Baker seek monetary, declaratory, and injunctive relief against defendants for discriminating on the basis of familial status and arbitrary characteristics in the operation of a residential rental property known as the Alto Riviera Apartments, located at 340 Ventura Avenue in Palo Alto, California, in violation of the federal Fair Housing Act, the Fair Employment and Housing Act, the Unruh Act, and related laws.

2.  Defendants, the owners and managers of the Alto Riviera Apartments,

refuse to negotiate for the rental of apartments with applicants who disclose that they will be living with one or more minor children. In their efforts to maintain a child-free apartment building, or to minimize the number of families with children residing there, defendants routinely inquire about an applicant's advanced degrees and refuse to negotiate for the rental of apartments unless the applicant has obtained or is working toward obtaining an advanced graduate degree. Using educational achievement as an admission criteria in this manner has the purpose or effect of discriminating based on familial status, race, gender, handicap or disability, and other protected characteristics. Using such admission criteria also constitutes unlawful arbitrary and intentional discrimination under the Unruh Act.

## II. JURISDICTION AND VENUE

3. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. section 1331 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. section 1367 to hear and determine plaintiffs' state law claims because those claims are related to plaintiffs' federal law claims and arise out of a common nucleus of related facts. Plaintiffs' state law claims are related to plaintiffs' federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

4. Pursuant to Local Rule 3-2, venue is proper in the San Jose Division because the claims alleged herein arose within Santa Clara County, California.

## III. PARTIES

5. Plaintiff Project Sentinel is a nonprofit corporation organized under the laws of the State of California with its principal place of business located at 430 Sherman Avenue in Palo Alto, California. Project Sentinel's mission is to promote fair housing throughout its service area, including Palo Alto, by working to guarantee all people equal access to housing opportunities and by working to create and maintain integrated housing patterns. One of its specific purposes and goals is the elimination of all forms of illegal housing discrimination. To this end, Project Sentinel's activities

include, but are not limited to: (1) investigating allegations of discrimination; (2) conducting tests of housing facilities to determine whether equal opportunity in housing is provided; (3) taking such steps as it deems necessary to assure such equal opportunity and to counteract and eliminate discriminatory housing practices; and, (4) providing outreach and education to the community regarding fair housing.

6. Plaintiff Michael Baker is a citizen of the United States currently living in the State of Colorado. He was a tenant at the Alto Riviera Apartments, apartment number 17, from on or about December 15, 2006 until he moved out on or about September 27, 2007.

7. Plaintiff Sarah Baker is a citizen of the United States currently living in the State of Colorado. She was a tenant at the Alto Riviera Apartments, apartment number 17, from on or about December 28, 2006 until she moved out on or about September 27, 2007. Ms. Baker was listed on the rental agreement as "Sarah Comin." She married plaintiff Michael Baker on December 26, 2006 and changed her last name to Baker.

8. Plaintiffs are informed and believe, and allege thereon, that defendant Feirman Corporation is the property management company that operates the Alto Riviera Apartments. The Feirman Corporation is also the general partner of defendant RIF Family Partnership, L.P.. The Feirman Corporation is incorporated under the laws of California, with a primary business address of 111 Main Street, Los Altos, California.

9. At all times relevant to this complaint, defendant RIF Family Partnership, L.P., has been the owner of the residential apartment complex known as the Alto Riviera Apartments, located at 340 Ventura Avenue in Palo Alto, California. The Alto Riviera Apartments consist of approximately 32 dwelling units made available for rental to the general public. The apartments offered for rent at the Alto Riviera Apartments constitute dwellings within the meaning of the federal Fair Housing Act and related state laws, and a business establishment within the meaning of the Unruh Act.

10. Robert Feirman is the registered agent for service of both defendant

Feirman Corporation and RIF Family Partnerhip, LP. Plaintiffs are informed and believe, and thereon allege that Robert Feirman also is an officer of defendant Feirman Corporation. Based on information and belief, plaintiffs believe that Mr. Feirman may be the alter ego of the Feirman Corporation, or that plaintiffs may be entitled to pierce the corporate veil and hold Mr. Feirman personally liable for the discriminatory housing practices of defendants RIF Family Partnership LP and the Feirman Corporation. Plaintiffs therefore expressly reserve the right to seek leave to amend this complaint to add Mr. Feirman as a defendant, should his personal liability be established through discovery.

11. Plaintiffs are informed and believe, and allege thereon, that defendant Don Phelps has been the resident manager of the Alto Riviera Apartments at all times relevant to this complaint. Plaintiffs are informed and believe, and allege thereon, that Mr. Phelps remains employed as the resident manager of the Alto Riviera Apartments.

12. Each defendant is, and at all times relevant was, the agent, employee or representative of each other defendant; each defendant, in doing the acts or in omitting to act as alleged in this complaint, was acting within the course and scope of his or her actual or apparent authority pursuant to such agency; or the alleged acts or omissions of each defendant as agent were subsequently ratified and adopted by each defendant as principal.

## IV. FACTS

### A. INTRODUCTION

13. Defendants, acting individually or in concert, directly or through agents, have engaged in a pattern or practice of unlawful discrimination in the ownership and operation of the Alto Riviera Apartments, including discrimination based on familial status, arbitrary characteristics, and other protected classifications. Defendants continue to engage in such a pattern or practice of discrimination so as to constitute a continuing violation. Defendants' unlawful conduct includes commission of the following discriminatory housing practices:

1        A.    Refusing to rent or to negotiate for the rental of a dwelling because of membership in a protected class or arbitrary characteristics;

      B.    Discouraging any person from inspecting or renting a dwelling because of membership in a protected class or arbitrary characteristics;

      C.    Discouraging the rental of a dwelling by exaggerating drawbacks or failing to inform any person of desirable features of a dwelling because of membership in a protected class or arbitrary characteristics;

      D.    Expressing to renters or any other person a preference for or limitation on any renter because of membership in a protected class or arbitrary characteristics;

      E.    Limiting information, by word or conduct, regarding suitably priced dwellings available for inspection or rental because of membership in a protected class or arbitrary characteristics; and,

      F.    Employing facially neutral selection criteria with a disproportionate effect on applicants with protected characteristics, including non-white applicants, female applicants, applicants with disabilities, applicants of various national origins, and applicants with one or more minor children, without adequate justification.

14.    In the alternative, defendants have negligently failed to hire, train, supervise and discipline their agents, employees, and themselves in order to conform the operation of the Alto Riviera Apartments to the standard of care for the industry.

### B. PLAINTIFFS MICHAEL BAKER AND SARAH BAKER

15.    Plaintiffs Michael Baker and Sarah Baker signed a one-year lease for the rental of apartment number 17 at the Alto Riviera Apartments on or about December 15, 2006. At the time they entered into the lease, Sarah Baker's last name was Comin. She changed her last name to Baker when she and Michael Baker were married on December 27, 2006.

16.    When they applied and signed the lease for the Alto Riviera Apartments,

1  Mr. Baker had a J.D. degree and was employed an associate attorney with Wilson
2  Sonsini Goodrich & Rosati in Palo Alto.  In or about September 2007, Mr. Baker
3  accepted a new job as an attorney at Cooley Godward in their Denver, Colorado office.
4  Mr. Baker was scheduled to move to Colorado at the end of September and begin his
5  new job on October 8, 2007.

6    17.    Shortly after he accepted the new position, Mr. Baker informed defendant Don Phelps that he and Ms. Baker would be moving out of the Alto Riviera Apartments before the end of their lease term.  Mr. Phelps stated that the Bakers would have to continue to pay their monthly rent for the remainder of the lease term until a lease was executed with a new tenant.

11    18.    Mr. Phelps gave the Bakers two options for locating a new tenant.  First, Mr. Phelps offered to conduct the tenant search himself.  Under that arrangement, the new tenant would sign a one-year lease at a higher monthly rate than the Bakers paid. Second, Mr. Phelps stated that the Bakers could locate a subtenant.  The subtenant would serve out the remainder of the Bakers' lease term at the existing monthly rate. Under both options, the new tenant would be required to complete defendants' application process and pay defendants' application fee.  Under both options, the Bakers were responsible for paying the monthly rent until the expiration of their lease term, or a new tenant commenced rental payments, whichever came first.

20    19.    Mr. and Mrs. Baker chose the second option and began to seek a subtenant.  On or about September 17, 2007, Mr. Baker posted a listing for their apartment on the website, craigslist.com.

23    20.    After Mr. Baker posted the listing on craigslist.com, they began to receive inquiries from interested potential subtenants.  The Bakers responded to emails and made arrangements to show their apartment to those who expressed interest.  Mrs. Baker showed the apartment to several such individuals in September 2007.

27    21.    On one occasion in September 2007, Mrs. Baker showed her apartment to prospective tenant and then walked her to Mr. Phelps' apartment so the prospective

tenant could fill out an application. Plaintiffs are informed and believe, and allege thereon, that Mr. Phelps observed the appearance of the prospective tenant and decided that she most likely did not meet his educational profile for tenants. Mr. Phelps was rude and discouraging to the prospective tenant. The prospective tenant stated that she could not live in such an environment and left without completing an application.

22. On or about September 24, 2007, Mr. Baker informed Mr. Phelps that Mr. Phelps could start searching for a new tenant, but offered to continue searching himself as well. Mr. Phelps agreed. Mr. Phelps asked Mr. Baker to refer all potential tenants to his email address. Mr. Baker agreed to do so.

23. Between September 24, 2007 and the end of September, Mr. Baker had received approximately five new emails from potential tenants. Mr. Baker referred all of the potential tenants to Mr. Phelps. By the end of the first week of October 2007, Mr. Baker had referred approximately 15 prospective tenants to Mr. Phelps.

24. On or about October 8, 2007, Mr. Baker learned from a potential tenant that Mr. Phelps responded to inquiries from potential tenants referred by Mr. Baker with an email message containing the following questions, or words to this effect:

"Would you tell me the names of who would be living there?

Would you tell me about your higher university degrees?"

The email message to the potential tenant also indicated that Mr. Phelps was offering solely a 12-month lease, rather than the 2 month sublease for the Bakers' unit.

25. On or about September 24, 2007, Mr. Phelps posted his own listing for the Bakers' apartment on craigslist.com. The text of the listing posted by Mr. Phelps included the following description of the Alto Riviera Apartments:

"Quiet community of Stanford graduate students, post-docs, professors, and PhDs working in Stanford Research Park. 80% of apartments have resident with a PhD or MD earned or being earned. Our rule is "Any noise complained about is too loud."

26. On or about October 8, 2007, Mr. Baker contacted Project Sentinel to complain of discrimination based on arbitrary characteristics – namely, educational achievement – at the Alto Riviera Apartments.

### C. PLAINTIFF PROJECT SENTINEL'S INVESTIGATION.

27. As a result of Mr. Baker's complaint, Project Sentinel investigated the operation of the Alto Riviera Apartments using fair housing testers. That testing revealed that defendants discriminate against families with children on the basis of familial status, and against members of protected classes on the basis of educational achievement.

***T.M., Tester posing as applicant with PhD and no children***

28. On or about October 12, 2007 at 3:05 p.m., tester T.M.,[1] posing as a single white male with a PhD, living with his girlfriend, sent an email to Mr. Phelps inquiring about the vacancy at the Alto Riviera Apartments.

29. At approximately 4:15 p.m. on the same day, T.M. received an email from Mr. Phelps in response. Mr. Phelps' email asked the following questions:

"Would you tell me the names of the people who would be living there?

Would you tell me about your higher university degrees?"

The email stated that it was from "Don, Resident Manager."

30. On or about October 15, 2007, T.M. responded to Mr. Phelps' email. T.M. stated that he would be living with his girlfriend and provided her name, and that he had a PhD in mechanical engineering. T.M.'s email also asked for more information about the application process and screening criteria.

31. On or about October 16, 2007 at 9:20 a.m., Mr. Phelps sent an email to T.M. offering to show him and his girlfriend the available apartment on October 17,

---

[1] Throughout this complaint, the testers are identified by initials only. Because the efficacy of fair housing testing depends upon the anonymity of testers, the full name of each tester will not be disclosed until after entry of a protective order requiring defendants to treat the identity of testers as confidential information, which may be used solely for purposes of this litigation.

FIRST AMENDED COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF
CASE NO. C-08-02486 HRL                                                                                            8

2007. In his email, Mr. Phelps also stated that "the central office uses many factors including current income, education and income prospects, past behavior, etc. in making a determination of credit rating."

32.  T.M. responded to Mr. Phelps by email, stating that he could not see the unit on October 17, 2007. T.M. and Mr. Phelps corresponded by email several more times concerning arrangements to see the unit. Mr. Phelps offered to show T.M. the unit on October 19, 2007 and October 24, 2007.

### Tester R.J., posing as a single man with a PhD and one child

33.  On or about October 16, 2007 at 3:20 p.m., Tester R.J., posing as a single white man with a PhD and one minor child, emailed Mr. Phelps to inquire about the available apartment.

34.  On or about October 17, 2007, R.J. received an email from Mr. Phelps in response. Mr. Phelps' email asked the same questions that were asked of Tester T.M., quoted above in paragraph 22.

35.  On or about October 17, 2007, R.J. sent an email to Mr. Phelps. In response to his questions, R.J. disclosed that he had a PhD in the "Bio Sciences" and would be living with his son, Jonathan.

36.  R.J. did not receive any further email or communication of any kind from Mr. Phelps. On or about October 22, 2007, R.J. emailed Mr. Phelps again, inquiring about whether the apartment was still available. He did not receive any response from Mr. Phelps. At no time did Mr. Phelps offer to show the apartment to R.J.

### Tester B.L., posing as a single man with no advanced degree and no children

37.  On or about October 12, 2007, at 3:16 p.m., Tester B.L., posing as a single man living with his girlfriend, with no children and no college degree, emailed Mr. Phelps to inquire about the available apartment.

38.  On or about the same date, October 12, 2007 at 4:15 p.m., B.L. received an email from Mr. Phelps in response. Mr. Phelps' email asked the same questions

that were asked of Tester T.M., quoted above in paragraph 22.

39. On or about the same date, October 12, 2007 at 6:51 p.m., B.L. sent an email to Mr. Phelps. In response to Mr. Phelps' questions, B.L. disclosed that he would be living with his girlfriend, and that neither of them had graduated from college.

40. B.L. did not receive any further email or communication of any kind from Mr. Phelps. On or about October 14, 2007 at 8:30 a.m., B.L. emailed Mr. Phelps again, asking to schedule a time to see the apartment. He did not receive any response from Mr. Phelps. At no time did Mr. Phelps offer to show the apartment unit to B.L.

### *Past housing discrimination complaints against defendants*

41. After conducting the investigation into the Alto Riviera Apartments in or around October 2007, Project Sentinel conducted a search of its files and located a past complaint against the same defendants. That complaint, which was filed with the California Department of Fair Employment and Housing, also alleged that defendants discriminated based on familial status in the rental of housing. The facts of that case are summarized below.

42. On August 13, 2004, Project Sentinel received a complaint from a woman with one minor son who applied to rent an apartment from Mr. Phelps at the Alto Riviera Apartments. The woman alleged that, as she was filling out the application, Mr. Phelps informed her that the building was quiet, and there were no children. The woman then disclosed for the first time to Mr. Phelps that she had a son. Mr. Phelps said, "that's a problem," or words to that effect. The woman stated that she did not think the building could exclude children. Mr. Phelps replied that he would have to discuss her application with the management company and get back to her.

43. Within the next two weeks, the woman called and left many messages for Mr. Phelps to inquire about her application to rent. She did not receive any return calls. Approximately two weeks after she submitted her application, she called again and spoke with Rosemary, who identified herself as Mr. Phelps' wife. Rosemary told the woman that it would be too dangerous to rent there because her son might drown in the

pool. She stated that it was "company policy" to exclude children, or words to that effect. She identified the "company" as the Feirman Company.

44. Project Sentinel conducted fair housing testing in response to the woman's complaint. The testing revealed that defendant Don Phelps and his wife, Rosemary Phelps, discouraged testers with children from applying to rent, exaggerated drawbacks to testers with children, and engaged in other disparate treatment based on familial status.

45. On or about February 1, 2005, Project Sentinel filed a complaint against defendants with the California Department of Fair Employment and Housing ("DFEH"). That complaint was resolved by way of conciliation agreement before the DFEH conducted a full investigation.

### D.   MICHAEL BAKER'S PRE-FILING NOTICE TO DEFENDANTS.

46. Although he was under no obligation to do so, on or about October 8, 2007, plaintiff Michael Baker attempted to contact Robert Feirman to discuss the inquiries Mr. Phelps was making of potential tenants. Mr. Baker called Mr. Feirman's telephone number twice but did not reach anyone in the office. On his second call, Mr. Baker left a message on Mr. Feirman's voice mail stating that Mr. Phelps was asking questions about potential tenants' educational degrees, and that Mr. Baker thought such inquiries were illegal. Mr. Baker did not receive any return call from Mr. Feirman or anyone purporting to speak on his behalf.

47. On or about October 27, 2007, Mr. Baker sent an email message to Karen McCay, who was identified as an attorney for the Feirman Corporation on a letter concerning Mr. Baker's move out from the Alto Riviera Apartments. Mr. Baker's email message advised Ms. McCay in detail of the allegations and evidence concerning discrimination based on familial status and educational achievement at the Alto Riviera Apartments. Mr. Baker requested that defendants return his October rent in the amount of $1,295; return his security deposit in the amount of $800; and release him from any obligation to pay the remaining month and a half of his lease. Mr. Baker's email also

requested that Ms. McCay forward the information to Mr. Feirman.

48. To date, Mr. Baker has not received any response to his October 27, 2007 email from defendants or Ms. McCay.

49. The Bakers paid $1,295 for the monthly rent for October 2007 before moving to Colorado. Near the end of October, they were informed by Mr. Phelps that another tenant would be moving in on or around October 30, 2007. The Bakers were refunded a two-day prorated amount of October's rent.

### E. PROJECT SENTINEL'S CONTINUING ROLE.

50. In response to defendants' discriminatory housing practices, Project Sentinel implemented an education and outreach project, providing residents of the Alto Riviera Apartments with information regarding their fair housing rights.

51. On or about April 27, 2008, Project Sentinel received a complaint from an individual who alleged that defendants engaged in unlawful discrimination. The complainant provided a copy of defendants' recent posting on craigslist.com, which advertised a two bedroom apartment at the Alto Riviera Apartments and contained the same description that is quoted above, in paragraph 16.

52. The complainant stated that he had responded to the defendants' posting on craigslist.com. The complainant stated that he then received an email message from Mr. Phelps asking about what type of advanced degrees he had. The complainant responded by stating that he did not know that having an advanced degree was a condition of renting the property. He reported that he never received any further response from Mr. Phelps.

### F. INJURIES

53. By reason of defendants' unlawful acts and practices, plaintiffs Michael Baker and Sarah Baker have suffered economic damages and emotional distress with attendant physical injury, humiliation and mental anguish, and other special and general damages according to proof. Accordingly, the Bakers are entitled to compensatory damages.

54. By reason of defendants' unlawful acts and practices, plaintiff Project Sentinel has diverted resources: (1) to investigate, evaluate, and determine the extent to which defendants engage in unlawful discrimination in the operation of the Alto Riviera Apartments; (2) to educate the residents of the Alto Riviera Apartments about their fair housing rights; and, (3) to prevent continued acts of unlawful discrimination at the Alto Riviera Apartments. Defendants' unlawful acts and practices have caused plaintiff Project Sentinel to divert resources from other programs and projects.

55. Defendants' unlawful acts and practices also have injured plaintiff Project Sentinel by frustrating its mission to serve the public by helping eradicate housing discrimination, resolving fair housing disputes, ensuring that decent rental housing is made available to all persons without discrimination, and protecting the important rights and benefits that arise from living in a diverse community. Defendants' unlawful acts and practices have caused Project Sentinel to suffer economic losses and out-of-pocket expenditures in their efforts to counteract the effects of unlawful discrimination based on familial status in the Palo Alto area and to provide outreach and education regarding the rights and obligations of the fair housing laws.

56. In doing the acts of which plaintiffs complain, defendants and their agents and employees acted with reckless disregard for the civil rights of the citizens of California. Accordingly, plaintiffs are entitled to punitive damages.

57. There now exists an actual controversy between the parties regarding defendants' duties under the federal and state fair housing laws. Accordingly, plaintiffs are entitled to declaratory relief.

58. Unless enjoined, defendants will continue to engage in the unlawful acts and the pattern or practice of discrimination described above. Plaintiffs have no adequate remedy at law. Plaintiffs are now suffering, and will continue to suffer, irreparable injury from defendants' acts and pattern or practice of discrimination unless relief is provided by this Court. Accordingly, plaintiffs are entitled to injunctive relief.

///

## V. CLAIMS

### A. FIRST CLAIM

### [Fair Housing Act]

59. Plaintiffs reallege and incorporate by reference paragraphs 1 through 50 of the complaint herein.

60. Defendants have injured plaintiffs by committing discriminatory housing practices in violation of the federal Fair Housing Act, 42 U.S.C. section 3601 et seq.

### B. SECOND CLAIM

### [California Fair Employment and Housing Act]

61. Plaintiffs reallege and incorporate by reference paragraphs 1 through 50 of the complaint herein.

62. Defendants have injured plaintiffs by committing discriminatory housing practices in violation of the California Fair Employment and Housing Act, California Government Code section 12955, et seq.

### C. THIRD CLAIM

### [Unruh Act]

### [Michael Baker and Sarah Baker vs. All Defendants]

63. Plaintiffs reallege and incorporate by reference paragraphs 1 through 50 of the complaint herein.

64. Defendants have injured plaintiffs Michael Baker and Sarah Baker by engaging in arbitrary discrimination in the operation of the Alto Riviera Apartments, a business establishment, in violation of the Unruh Act, Civil Code section 51 et seq.

### D. FOURTH CLAIM

### [Unfair Business Practices]

65. Plaintiffs reallege and incorporate by reference paragraphs 1 through 50 of the complaint herein.

66. In acting as herein alleged, defendants have engaged in a pattern or practice of unlawful discrimination in the operation of the Alto Riviera Apartments, a

business establishment, and therefore have engaged in acts of unfair competition as the same is defined in section 17200 of the Business & Professions Code.

61. In bringing this action for relief, plaintiffs are acting in the interest of themselves and the general public pursuant to the California Business and Professions Code section 17204.

## E.  FIFTH CLAIM

### [Negligence]

67. Plaintiffs reallege and incorporate by reference paragraphs 1 through 50 of the complaint herein.

68. Defendants owed plaintiffs a duty to operate the Alto Riviera Apartments in a manner that was free from unlawful discrimination and in accordance with the standards of care for that industry.  Defendants negligently violated that duty. Defendants' breach of that duty was the result of negligence, including but not limited to:

   A. Defendants' negligent failure to train their employees and themselves regarding the requirements of state and federal fair housing laws;

   B. Defendants' negligent failure to hire persons who were familiar with the requirements of state and federal fair housing laws;

   C. Defendants' negligent failure to supervise their employees regarding compliance with the requirements of state and federal fair housing laws;

   D. Defendants' negligent failure to discipline or terminate employees who failed to comply with the requirements of state and federal fair housing laws; and,

   E. Defendants' negligent failure to operate the Alto Riviera Apartments in accordance with the standard of care of the industry.

///

## VI. RELIEF

Wherefore, plaintiffs pray for entry of judgment against defendants that:

1. Awards compensatory and punitive damages according to proof;

2. Awards statutory damages of three times actual damages but no less than $4,000 under the Unruh Act to plaintiff Michael Baker and no less than $4,000 to plaintiff Sarah Baker;

3. Declares that defendants have violated the provisions of the applicable federal and state fair housing laws;

4. Enjoins all unlawful practices complained about herein and imposes affirmative injunctive relief requiring defendants, their partners, agents, employees, assignees, and all persons acting in concert or participating with them, to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants regardless of familial status;

5. Awards costs of this action, including reasonable attorneys' fees; and,

6. Awards all such other relief as the Court deems just.

Dated: June 10, 2008.

Respectfully submitted,

BRANCART & BRANCART

_____
Liza Cristol-Deman
Attorneys for Plaintiffs