BRANCART & BRANCART
  Christopher Brancart (SBN 128475)
  Liza Cristol-Deman (SBN 190516)
Post Office Box 686
Pescadero, CA 94060
Tel:   (650) 879-0141
Fax:   (650) 879-1103
cbrancart@brancart.com
lcristoldeman@brancart.com

Attorneys for Plaintiffs

**PAHL & McCAY**
A Professional Corporation
**Karen K. McCay, Esq.** (State Bar No. 187664)
**Servando R. Sandoval, Esq.** (State Bar No. 205339)
225 West Santa Clara Street, Suite 1500
San Jose, California 95113-1752
Telephone No.: (408) 286-5100
Facsimile No.: (408) 286-5722

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| **PROJECT SENTINEL**, a California Nonprofit Corporation; MICHAEL BAKER; and, SARAH BAKER; individually and on behalf of the GENERAL PUBLIC,<br><br>Plaintiffs,<br><br>vs.<br><br>**THE FEIRMAN CORPORATION**, a California Corporation; THE RIF FAMILY PARTNERSHIP, L.P.; and DON PHELPS;<br><br>**Defendants.** | Case No. C-08-02486 JW<br><br>**JOINT CASE MANAGEMENT STATEMENT; REPORT OF THE RULE 26(f) MEETING OF COUNSEL**<br><br><u>Case Management Conference:</u><br>Date: Sept. 22, 2008<br>Time: 1:30 p.m.<br>Place: Courtroom of the<br>   Hon. James Ware |

Pursuant to Local Rule 16-9 and the standing order for all judges of the Northern District of California, the parties hereby submit this joint case management statement and report of the meeting of counsel pursuant to Rule 26(f) of the Federal Rules of Civil Procedure.

**JOINT CASE MANAGEMENT STATEMENT AND REPORT OF THE RULE 26(f) MEETING OF COUNSEL – Case No. C-08-2486 JW**   1

**1.    Jurisdiction and Service:**

This Court has federal question jurisdiction over plaintiffs' claims under the federal Fair Housing Act, 42. U.S.C. § 3601 et seq., and supplemental jurisdiction over plaintiffs' state law claims under the California Fair Employment and Housing Act, California Government Code §§ 12927 and 12955, et seq. ("FEHA"), and the Unruh Act, Civil Code § 51 et seq..

There are no special issues with respect to venue or personal jurisdiction. All defendants have been served and have filed an answer to the complaint and first amended complaint.

*2.*    **Facts:**

This is a fair housing case. Plaintiff Project Sentinel, Inc. is a California nonprofit corporation with its primary place of business located in Palo Alto, California. Project Sentinel provides fair housing services in many local jurisdictions in Northern California, including Palo Alto. Plaintiffs Sarah and Michael Baker are former tenants of the Alto Riviera Apartments, a 32-unit apartment building located 340 Ventura Avenue in Palo Alto, who allege that they were injured by discriminatory housing practices there.

Defendant RIF Family Partnership L.P. is the owner of the Alto Riviera Apartments. The Alto Riviera Apartments constitutes a dwelling and a housing accommodation within the meaning of the federal Fair Housing Act and FEHA. Defendant Feirman Corporation is the general partner of the RIF Family Partnership, L.P. , and also the management company that operates the Alto Riviera Apartments. Defendant Don Phelps is the resident manager of the Alto Riviera Apartments.

**A.    Plaintiffs' factual allegations:**

The operative complaint is the First Amended Complaint, filed on June 10, 2008 (docket entry 9). Plaintiffs seek monetary, declaratory and injunctive relief to address discrimination based on familial status and arbitrary characteristics in the operation of the Alto Riviera Apartments. Plaintiffs allege that defendants have engaged in unlawful discrimination by refusing to rent to families with children and people without advanced

1 college degrees and other discriminatory housing practices based on familial status and
2 arbitrary characteristics.
3   Plaintiffs Sarah and Michael Baker signed a one-year lease and moved into the
4 Alto Riviera Apartments starting in approximately December 2006.  When Mr. Baker's
5 new  job necessitated a move to Colorado, he informed defendant Don Phelps that he
6 needed to move out in late September, approximately two months before the end of his
7 one-year lease.   Mr. Phelps stated that the Bakers would have to continue to pay their
8 monthly rent for the remainder of the lease term until a lease was executed with a new
9 tenant.
10   At the Bakers' request, Mr. Phelps agreed that the Bakers could locate a sub-
11 tenant to serve out the remainder of their lease term.  According to Mr. Phelps, the sub-
12 tenant would have to fill out his application and meet his qualifications for tenancy.  The
13 Bakers then posted a listing for the sub-lease of their apartment on craigslist.com.
14 They received numerous emails in response to the posting and showed the apartment
15 to several prospective tenants.  One such prospective tenant declined to fill out an
16 application after she met with Mr. Phelps, who was rude and discouraging.
17   Approximately one week after the Bakers posted their own listing on craigslist
18 and showed their apartment to prospective tenants, Mr. Phelps posted his own listing
19 about the apartment on craigslist.com.  Included in that listing was the following
20 description of the Alto Riviera Apartments:
21   "Quiet community of Stanford graduate students, post-docs, professors,
22   and PhDs working in Stanford Research Park.  80% of apartments have
23   resident with a PhD or MD earned or being earned.  Our rule is "Any noise
24   complained about is too loud."
25   At around the same time that Mr. Phelps posted his own listing, he directed the
26 Bakers to refer all potential tenants who responded to the Bakers' listing to him.
27 Between September 24, 2007 and the end of the first week of October 2007, Mr. Baker
28 had referred approximately 15 prospective tenants to Mr. Phelps.  On or about October

1 8, 2007, Mr. Baker learned from a potential tenant that Mr. Phelps responded to
2 inquiries from potential tenants referred by Mr. Baker with an email message containing
3 the following questions, or words to this effect:
4     "Would you tell me the names of who would be living there?
5     Would you tell me about your higher university degrees?"
6     Mr. Baker then contacted Project Sentinel to complain of discrimination based on
7 arbitrary characteristics – namely, educational achievement – at the Alto Riviera
8 Apartments. As a result of Mr. Baker's complaint, Project Sentinel investigated the
9 operation of the Alto Riviera Apartments using fair housing testers. That testing
10 revealed that defendants discriminate against families with children on the basis of
11 familial status, and against members of protected classes on the basis of educational
12 achievement. Specifically, Mr. Phelps asked all testers who inquired about the vacant
13 unit to provide the names of proposed residents, and to provide information about their
14 "higher university degrees." Testers who responded to Mr. Phelps' inquiries by stating
15 that they had a minor child did not receive any further communication from Mr. Phelps,
16 and they were unable to set up appointments to see the unit. Similarly, testers who
17 responded to Mr. Phelps' inquiries by stating that they did not have a higher university
18 degree did not receive any further communication from Mr. Phelps and were unable to
19 set up appointments to see the unit. By contrast, testers who responded to Mr. Phelps'
20 inquiries by stating that they had no children *and* a higher university degree received
21 multiple email messages from Mr. Phelps inviting them to see the unit.
22     Plaintiff Project Sentinel also received a complaint of familial status
23 discrimination at the Alto Riviera Apartments in August 2004. The testing conducted at
24 that time corroborated the allegation, and the case was referred to the California
25 Department of Fair Employment and Housing ("DFEH"). The case was resolved by way
26 of conciliation agreement before the DFEH conducted a full investigation..
27     In response to defendants' discriminatory housing practices, Project Sentinel
28 implemented an education and outreach project, providing residents of the Alto Riviera

1  Apartments with information regarding their fair housing rights.  In addition, in April
2  2008, Project Sentinel received a new complaint from a person alleging that defendants
3  discriminated against him based on his educational status after he responded to the
4  craigslist.com posting about the Alto Riviera Apartments.

**B.     Defendants' Factual Allegations**

Plaintiff MICHAEL BAKER is an attorney with Cooley Goodward & Kronish, who was working at their Palo Alto office.  In December 2006, MICHAEL BAKER and his wife SARA BAKER (hereinafter MICHAEL BAKER and SARA BAKER will be referred to collectively as "BAKER") executed a one year lease with a termination date of December 15, 2007.

On or about September 12, 2007, 3 months prior to the termination date of the lease agreement, BAKER notified the property manager DON PHELPS ("PHELPS"), via email, that they had received a job offer in Denver and that they would be moving by the "end of the month."  In that same email communication, BAKER inquired of PHELPS as to the process of finding a tenant to "take over [their] lease."  PHELPS responded to their inquiry and advised BAKER of their options.  PHELPS advised BAKER that the standard procedure would be to allow management to find a new tenant.  BAKER was advised that any new tenant would have to be approved by management and that BAKER would continue to be responsible for payment of rent until a new tenant was secured.

BAKER vacated their apartment unit on or about September 26, 2007, and Defendants immediately started to clean and prepare the unit for the new tenant immediately.  A new tenant was obtained as of October 30, 2007, and BAKER was advised that their obligations under the lease agreement had been terminated.

Soon after BAKER notified Defendants of their intent to breach their lease, they provided management with a potential applicant for their unit.  The potential applicant submitted an incomplete application, however, and when the additional information was requested from her, she decided to take another apartment.  Thereafter, PHELPS

fielded inquiries from other individuals who were responding to ads posted on craigslist.com by BAKER.  PHELPS also posted his own ads on craigslist.com after the apartment was ready for occupancy.

PHELPS responded to each of the inquiries and sought further information from the prospective applicants relating the names of all occupants and any higher degrees held, if any.

Contrary to the allegations in the Complaint, PHELPS did not discriminate on the basis of familial status, i.e. families with children nor on any other basis.  PHELPS communicated with all prospective tenants and attempted to show the apartment to all applications irrespective of their familial status of educations background.

**3.    Legal Issues:**

Plaintiffs contend that defendants committed discriminatory housing practices in violation of the Fair Housing and FEHA, by:

  A.  Discriminating in the rental of, or otherwise making unavailable or denying, a dwelling to any renter because of familial status (42 U.S.C. § 3604(a); 24 C.F.R. § 100.50(b)(3); Cal. Govt. Code §§ 12955(a), (d) and (k) and 12955.6);

  B.  Refusing to negotiate for the rental of a dwelling because of familial status (42 U.S.C. § 3604(a); 24 C.F.R. § 100.60(b)(2); Cal. Govt. Code §§ 12927(c)(1) and § 12955(a), (d) and (k) and 12955.6);

  C.  Restricting or attempting to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, or renting a dwelling, because of familial status (42 U.S.C. § 3604(a); 24 C.F.R. § 100.70(a); Cal. Govt. Code §§ 12955(a), (d) and (k) and 12955.6);

  D.  Discouraging any person from inspecting or renting a dwelling because of familial status (42 U.S.C. § 3604(a) and (b); 24 C.F.R. § 100.70(c)(1); Cal. Govt. Code §§ 12955(a), (d) and (k) and 12955.6);

  E.  Discouraging the rental of a dwelling because of familial status

by exaggerating drawbacks or failing to inform any person of desirable features of a dwelling (42 U.S.C. § 3604(a) and (d); 24 C.F.R. § 100.70(c)(1); Cal. Govt. Code §§ 12955(a), (d) and (k) and 12955.6);

F.  Limiting information, by word or conduct, regarding suitably priced dwellings available for inspection or rental because of familial status (42 U.S.C. § 3604(a) and (d); 24 C.F.R. § 100.80(b)(4); Cal. Govt. Code §§ 12955(a), (d) and (k) and 12955.6);

G.  Providing false or inaccurate information regarding the availability of a dwelling for rental to any person, including testers, regardless of whether such person is actually seeking housing, because of familial status (42 U.S.C. § 3604(d); 24 C.F.R. § 100.80(b)(5); Cal. Govt. Code §§ 12955(a), (d) and (k) and 12955.6);

H.  Making statements with respect to the rental of a dwelling that indicate a preference, limitation, or discrimination based on familial status, or an intention to make any such preference, limitation, or discrimination (42 U.S.C. § 3604(c); 24 C.F.R. § 100.75; Cal. Govt. Code §§ 12955(c) and 12955.6);

I.  Engaging in acts that have the effect, regardless of intent, of unlawfully discriminating on the basis of a protected classification, without adequate justification.  (See Pfaff v. U.S. Dep't of Housing & Urban Dev't, 88 F.3d 739, 745-46 (9th Cir. 1996); Gov't Code § 12955.8(b); Sisemore v. Master Financial, Inc., 151 Cal. App.4th 1386, 1418-19 (2007));

J.  Discriminating against people in the rental of housing on the basis of their educational achievements, an arbitrary basis, in the operation of a business establishment.  (Civil Code § 51 et seq.; Sisemore, 151 Cal.App.4th at 1404-06.

Plaintiff Project Sentinel has standing to assert a violation of the Fair Housing Act and FEHA on its own behalf.  A fair housing organization, such as Project Sentinel,

1 qualifies as an "aggrieved person" under both the federal and state laws for purposes of
2 bringing suit if it alleges that it has been injured by a discriminatory housing practice.
3 <u>Fair Housing of Marin v. Combs</u>, 285 F.3d 899, 905 (9th Cir. 2002); <u>Sisemore v. Master</u>
4 <u>Financial, Inc.</u>,151 Cal. App.4th 1386, 1424 (2007).  Direct standing to sue is accorded
5 to a fair housing organization that shows a drain on its resources or frustration of its
6 mission because of a defendant's discriminatory housing practices.  <u>Fair Housing of</u>
7 <u>Marin</u>, 285 F.3d at 905.
8     Defendants contend that they have not engaged in any unlawful discriminatory
9 conduct, as alleged above.

10 **4.    Motions:**
11     There are no motions pending, and no motions have been brought to date.

12 **5.    Amendment of Pleadings:**
13     Plaintiffs do not contemplate a need to amend the pleadings at this time, but
14 reserve the right to do so should additional information be discovered that supports
15 amendment.
16     The parties stipulate to a deadline of January 30, 2009, to amend the pleadings.

17 **6.    Evidence Preservation:**
18     The parties are aware of the duty to preserve all documents and things relevant
19 to the facts alleged in this case.

20 **7.    Disclosures:**
21     The parties have agreed to exchange Rule 26(a) initial disclosures on August 8,
22 2008.
23     Plaintiffs plan to take depositions of defendants Don Phelps and the Feirman
24 Corporation under Rule 30(b)(6).  If the case does not reach an early resolution,
25 plaintiffs may take a limited number of other depositions of relevant witnesses.
26 Defendants intend to take the deposition of Plaintiffs, as well as the depositions of the
27 alleged testers for Plaintiff Project Sentinel.
28     The parties do not believe there is good cause to modify the rules governing the

maximum number of discovery requests and depositions.

**8. Class Actions:**

Not applicable.

**9. Related Cases:**

None pending.

**10. Relief:**

Plaintiffs seek compensatory damages, punitive damages, injunctive relief, declaratory relief, and an award of attorneys' fees and costs if they are the prevailing party. The Baker plaintiffs' damages are based on their emotional distress and the out of pocket costs associated with the delay in sub-leasing their apartment. Project Sentinel's damages are calculated based on the diversion of its resources and frustration of its mission. See Fair Housing of Marin v. Combs, 285 F.3d 899, 905 (9th Cir. 2002); Sisemore v. Master Financial, Inc.,151 Cal. App.4th 1386, 1424 (2007).

**11. Settlement and ADR:**

The Parties believe that the most effective method of resolving fair housing cases such as this one is by referral to a magistrate judge for an early settlement conference. The parties have filed a notice with the Court and the ADR Department indicating that this is their preference, but no date has been scheduled for the ADR phone conference as of yet.

If the case is not referred to a settlement conference with a magistrate judge, the parties request ENE.

**12. Consent to Magistrate Judge for All Purposes:**

Defendants declined the initial assignment of this case to a magistrate judge and filed a form to that effect.

**13. Other References:**

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

///

**14.    Narrowing of Issues:**

Plaintiffs contemplate serving requests for admissions or other discovery in order to determine whether there are critical facts that are not in dispute.  If so, plaintiffs anticipate filing a motion for partial summary judgment.

**15.    Expedited Schedule:**

This is not the type of case that can be handled on an expedited basis with streamlined procedures.

**16.    Scheduling:**

| Event | Date |
|---|---|
| Expert designation | May 1, 2009 |
| Rebuttal expert designation | June 19, 2009 |
| Non expert Discovery Cut Off | July 31, 2009 |
| Expert Discovery Cut Off | August 3, 2009 |
| Hearing of Dispositive Motions | Monday, September 14, 2009, 9:00 am |
| Pretrial Conference | October 2009 |
| Trial | November 2009 |

**17.    Trial:**

At this point, neither side has demanded a jury trial.  The parties are currently considering whether to do so and reserve their right to make a jury demand before trial.  The parties anticipate that the trial will last approximately five days.

**18.    Disclosure of Non-party Interested Entities or Persons.**

Plaintiffs have filed the Certification of Interested Entities or Persons required by Civil Local Rule 3-16.  (Doc. 1, page 16.)  In that certification, plaintiffs stated: "Pursuant to Civil Local Rule 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report."

Defendants have filed the Certification of Interested Entities or Persons required by Civil Local Rule 3-16.  In that certification, defendants stated:  "Pursuant to Civil

1  Local Rule 3-16, the undersigned certifies that as of this date, other than the named
2  parties, there is no such interest to report."
3      **19.   Other:**
4      None.

5                                        Respectfully submitted,
6  Dated: August 8, 2008                 BRANCART & BRANCART
7
8
                                         /s/ Liza Cristol-Deman
9                                        Liza Cristol-Deman
                                         Attorneys for Plaintiffs
10
11 Dated: August 8, 2008                 PAHL & MCCAY
12
13                                       /s/ Servando R. Sandoval
                                         Servando R. Sandoval
14                                       Attorneys for Defendants
15
16
17
18
19
20
21
22
23
24
25
26
27
28